689 So.2d 1092 (1997)
SPANISH BROADCASTING SYSTEM OF FLORIDA, INC., Appellant,
v.
Rogelio ALFONSO, Appellee.
No. 96-1412.
District Court of Appeal of Florida, Third District.
January 22, 1997.
Rehearing Denied April 9, 1997.
*1093 Lauri Waldman Ross and Jorge R. Orta, Miami, for appellant.
Wampler, Buchanan & Breen and Donna L. DeConna, Miami, for appellee.
Before NESBITT, GODERICH and GREEN, JJ.
PER CURIAM.
Spanish Broadcasting System ("SBS") appeals from an adverse final judgment entered after a jury trial on Rogelio Alfonso's action for breach of employment contract and conversion. We reverse upon our finding that SBS' motion for directed verdict should have been granted for the reasons which follow.
The evidence taken in the light most favorable to Alfonso reveals that he had been employed as a disc jockey at a radio station acquired by SBS in 1981. From 1981 through 1990, Alfonso worked without any written employment contract. In 1990, however, SBS and Alfonso executed a written employment agreement for the first time. The terms of that agreement provided, inter alia, that Alfonso would be employed as a "[d]isk jockey, announcer, musical adviser and musical director" for a base salary to be increased annually, plus bonuses based upon the station's arbitron ratings. This contract further provided that it would be 3 years in duration commencing February 15, 1990, and was terminable by either party upon 30 days advance notice, otherwise, it was automatically renewable for an additional 2 year term. Alfonso testified that he terminated this contract on January 13, 1993 to get a better position elsewhere and a better salary.
He thereafter received an offer from a competing station to become its musical director and disc jockey for a 3 year term (renewable for an additional 2 years) commencing on March 1, 1993, at a starting salary of $75,000.00 which would be increased to $80,000.00 in the second year and $85,000.00 in years 3 through 5. Alfonso further testified that when he told SBS of this offer, SBS offered to renew his old contract and "to make a better offer than the competing one." Alfonso thereafter met several times with SBS' chairman, Raul Alarcon, to negotiate a new contract. The last of such meetings took place at a cafe where Alfonso claims that an agreement with Alarcon was reached and memorialized in some handwritten notes on SBS stationery. This stationery contained various hand scribbled notes, including a salary of $85,000.00 which Alfonso testified was the salary agreed upon and bonus amounts based upon various arbitron point shares. The handwriting on the stationery was that of both Alarcon and Alfonso. At the bottom, however, Alarcon's signature appears alone following the words "this will be sining [sic] on a[sic] official agreement."
Significantly, there was no notation as to the duration of Alfonso's purported new contract with SBS on the handwritten memorandum. At trial, Alfonso testified that it was his understanding that the duration of this new contract was to be 5 years but he candidly acknowledged this was a matter for further agreement with SBS.[1] Although no *1094 formal contract was ever executed between these parties, Alfonso continued to work for SBS at an increased annual salary of $85,000.00 until his termination in April 1994.[2]
Alfonso brought the action below for breach of employment contract and conversion. The basis of Alfonso's conversion count was SBS' alleged failure to reimburse him for music he purchased for the station while in its employ.
The case proceeded to trial and at the close of Alfonso's case in chief, SBS moved for a directed verdict on both counts of the complaint. As grounds for the breach of contract count, SBS argued that the purported handwritten "agreement" memorialized on SBS' stationery was unenforceable due to its failure to contain a definite term of employment. SBS further argued that it was entitled to a directed verdict on the conversion count as well because the basis of this count (i.e., SBS' alleged failure to pay money owed) was a breach of a contract action which was not cognizable in tort. The court below denied SBS' motion for directed verdict on both counts and the jury found for Alfonso on both counts. The jury awarded Alfonso damages on his contract claim in the amount of $162,917.00 which represented Alfonso's salary from the date of his termination in April 1994 through the date of the trial in March 1996. Alfonso was additionally awarded the sum of $385.49 on his conversion claim. When SBS' renewed motion for directed verdict was denied, a final judgment was entered against SBS. This appeal followed.
As to the breach of contract claim, we agree with SBS that its motion for directed verdict should have been granted where the evidence disclosed that an essential term of the purported written agreement sought to be enforced (i.e., duration of employment) was missing and indeed subject to further negotiation by the parties. Cf., e.g., Lindsey v. M.A. Zeccola & Sons, Inc., 26 F.3d 1236, 1239-42 (3d Cir.1994) (citing Restatement, 2d of Contracts § 131 (1981)) (concluding, for purposes of analogous statute of frauds inquiry, that the length of the employment term is "essential" and must be part of the required "writings"). We find the handwritten notes on SBS' stationary to be nothing more than "an agreement to agree" and unenforceable as a matter of law. See John Alden Life Ins. Co. v. Benefits Management Assocs., Inc., 675 So.2d 188, 189 (Fla. 3d DCA 1996) and cases cited therein. Without any agreed-upon duration, Alfonso's continued employment with the station after his termination of the prior written contract was always terminable at will and not subject to a breach of contract action. DeMarco v. Publix Super Markets, Inc., 384 So.2d 1253, 1254 (Fla. 1980); Ross v. Twenty-Four Collection, Inc., 617 So.2d 428, 428 (Fla. 3d DCA 1993).
Finally, we also agree with SBS that Alfonso's purported conversion count was actionable only in contract, therefore, SBS was entitled to a directed verdict on this tort action as well. Specifically, the evidence in support of this count indicated that Alfonso had an ongoing practice of purchasing music for his radio show and charging such purchases on his personal credit card. The station would then reimburse him for his expenses. Clearly, Alfonso's entitlement to reimbursement for the purchase of recordings was based upon a mutual agreement or understanding between him and the station. We therefore conclude that his claim for the station's nonreimbursement of certain such purchases was properly cognizable under contract law rather than tort.
[The] mere obligation to pay money may not be enforced by a conversion action....

*1095 [A]n action in tort is inappropriate where the basis of the suit is contract, either express or implied.
Rosen v. Marlin, 486 So.2d 623, 625 (Fla. 3d DCA) (quoting Belford Trucking Co. v. Zagar, 243 So.2d 646 (Fla. 4th DCA 1970)), rev. denied, 494 So.2d 1151 (Fla.1986). "A debt which may be discharged by the payment of money in general cannot form the basis of a claim for conversion". Rosen, 486 So.2d at 625 (citations omitted).
We therefore reverse with directions that final judgment be entered in favor of SBS.
Reversed.
NOTES
[1] * * * * *
Q. Exhibit 3. Does it contain a beginning date?
A. No.
Q. No beginning date.
A. No.
Q. No ending date.
So, under the terms of this to do list, did you think that you were permanently to work for the particular employer, for ten, twenty, thirty years?
A. At least for five more years.
Q. At least for five more years. Six years?
A. I don't know. Five years, if it was the agreement to work for five more years with this new contract.
Q. Where does it say this in here?
A. We were going to agree on that, it would renew my old contract and it would match the offer of the competing station.
* * * * * *
Q. Where does it say that? Does it say five years?
A. It doesn't say. We agreed on that.
Q. Thank you.
No beginning date, no ending date, no term. Is that correct?
A. It's a lot of terms that are not included in this paper.
[2] Alfonso's termination was the result solely of the station's change of format.